## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **JERNESHA MCGHEE** | § | **CAUSE NO.** |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **V.** | § | _____ **cv** _____ |
| | § | |
| | § | |
| **METRO PLEX NURSING AND** | § | |
| **REHABILITATION, L.P. by DAYBREAK** | § | |
| **VENTURE, LLC** | § | |
| **And** | § | |
| | § | |
| **DAYBREAK VENTURES, LLC** | § | |
| **DEFENDANT** | § | **JURY DEMANDED** |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

**Plaintiff JERNESHA MCGHEE ("Plaintiff")** files this Complaint and would

respectfully show the Court as follows:

### PARTIES

1.      Plaintiff is an individual who currently resides in Dallas County, Texas.

2.      Defendant METRO PLEX NURSING AND REHABILITATION, L.P. by

DAYBREAK VENTURE, LLC is a Texas corporation.  Defendant may be served with process

through its registered agent, Amarillo Corporate Services, LLC, 500 Taylor St. , Suite #1100  LB

219, Amarillo, Texas 79101.

3.       Defendant DAYBREAK VENTURE, LLC. is a Texas corporation.  Defendant may

be served with process through its registered agent, Amarillo Corporate Services, LLC, 500 Taylor

St. Suite #1100  LB 219, Amarillo, Texas 79101.

JURISDICTION AND VENUE

4.       Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has federal question jurisdiction because the action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3).

5.       Venue is proper in the U.S. District Court for the N o r t h e r n District of Texas, pursuant to 42 U.S.C. 1391(b) because the unlawful practices alleged below were committed therein.

6.       This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims if any, which are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the U.S. Constitution.

EXHAUSTION OF ADMINISTRATIVE PROCEDURES

7.       Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC).  Plaintiff filed this suit within ninety (90) days of receiving a Notice of Right to Sue from the EEOC, a true and correct copy of which is attached hereto as Exhibit A.

CONDITIONS PRECEDENT

8.       All conditions precedent have been performed or have occurred.

FACTS

9.       In about January of 2017, a nursing home facility controlled and operated by Daybreak Venture, LLC (hereinafter Daybreak) called Metroplex Nursing and Rehabilitation Center (hereinafter "Metroplex") employed David Dickson as their facility administrator for their Metroplex facility mentioned above.

10.      Metroplex is and was at all times located at 658 SW 3rd St. in Grand Prairie, Texas.

11.     As the facility administrator David Dixon oversaw the daily operations of that facility.  He had the power to hire and fire employees and was generally responsible and accountable for the daily running of that facility for Daybreak.

12.     Although Dickson was the administrator of the facility, each facility had their own Human Resources department (hereinafter "HR").  The head of HR at "Metroplex" was Joyce VanStory, who also served as the business manager.

13.     While Dickson served as the administrator of Metroplex, he began a pattern of behavior of sexually harassing young black female nurses or nurse's aides and other young African American female employees at Metroplex.

14.     His conduct ranged from physically assaulting these employees by groping them in a sexual manner, to sending them unwanted pornographic text messages with video clips of him masturbating.  Additionally, he would send unwanted still photos of his penis and other unrequested pornographic images.

15.     After sending these unwanted messages or after physically assaulting these women he would either remind them he had the power to fire them or to give them a raise if they kept quiet about his actions.

16.     For example, on numerous occasions in 2017 nurse assistant **Jasmine Johnson** was cornered by Dickson inside the Metroplex facility.  During those unwanted and awkward encounters Dickson made numerous unwanted and inappropriate comments and gestures to her.

17.     While she was pregnant he told her "that could have been my baby"; "I just want to fuck you for a long time"; "my wife doesn't like long sex (implying that she could give him sex for a long duration)": "you make my dick hard"; He was saying this while licking his lips and staring at her breasts.

18.     Around mid-May, 2017, Ms. Johnson complained about the aforementioned comments to Brandy Jefferson the Nursing manager at Metroplex.  Ms. Jefferson said "she knew that Dixon made sexual advances and said that he had done the same to the girl in the kitchen".  Although Ms. Johnson complained to her supervisor Brandy Jefferson, nothing was ever done to stop or curtail Dickson's behavior towards Ms. Jasmine Johnson.  Due to the stress in part caused by Dickson constant sexual harassment, Ms. Johnson had a miscarriage and lost her baby.

19.     Others were aware of Dickson's behavior towards Jasmine Johnson, including her superiors.  However, no action was taken to stop Dickson.  Because HR did nothing to curtail Dickson's harassment, the sexual comments and messaging continued until approximately August 2017. In August the text messages and lewd comments and touching's escalated to the point where Dickson invited her to his place to have sex. It became so unpleasant to work at that facility, Ms. Johnson was forced to resign due to the hostile work environment – a constructive discharge.

20.     Another example of Dickson's pattern of behavior is what happened to Octavia Norman.

21.     Octavia Norman was a twenty-year-old black female.  She worked in the dietary department and in the kitchen cleaning dishes.  She worked at Metroplex for approximately six months. It is believed she worked from approximately January of 2017 until around August of 2017).

22.     After she had been working there approximately a month, Administrator Dickson began coming into the dietary area where she worked.  In order to keep the conversation private, he would corner her in an area in the facility and he then began making sexual comments to her. "You're so beautiful, what can I do to date you and take you out to drink".  David Dickson is a fifty-eight-year-old white male.

23.     At first Ms. Norman blushed at his comments and tried to awkwardly ignore his

comments.  However, his actions became progressively worse.  He would come by her work area more frequently in his official capacity and comment "I can't help but undress you with my eyes"; "my wildest dream is to get you into my bed"; "I'll put you through school, as long as you don't say anything to anybody about us." I want to see what the inside of you feels like"; "would you mind feeling my penis?"; "I bet that you taste good" "you have a nice ass"; "I bet you'd feel real good"; "I bet your thing is tight after sex"; "when are we going out to eat, I want to come over so I can screw you"; "come over, so I can screw you and be in you, after work".

24.     Because of Dickson's position as the facility administrator, he accessed employee telephone numbers.  He would send unwanted and unsolicited text messages to Ms. Norman reiterating the above.

25.     Ms. Norman made numerous attempts to try to stop Dickson from making these unwanted comments.  She tried telling him she was a lesbian.  That didn't work.  He commented "I bet she can't do your pussy like I can"

26.     She then told him that his comments were making her feel very uncomfortable since he was her boss.  That didn't work either.

27.     After she tried to avoid administrator Dickson, Dickson escalated his actions.

28.     When Dickson walked around the facility he would look to make sure Ms. Norman was alone.  He would find a way to try to pretend that he needed to get something from a location in the room where she worked.  In the process of pretending to have to squeeze by her to reach an item in that room, he would intentionally rub his crouch/groin against her, trying to grab her hand and force her to grab his penis.

29.     He then would resort to grabbing her thigh during conversations and grabbing her buttocks whenever she had to pass by him.  She tried to avoid him as much as possible.

30.     Because she was avoiding him he then began sending her unsolicited text messages telling her "she looked good in jeans and how he wanted to get inside those jeans".  He also sent other messages telling her he was "trying to get away from his wife so I can get you into bed" "I want to explore you "  She never provided him her cell number.  Because he was the facility administrator he accessed her cell number from her personnel files.  His calls and text messages were unwanted.

31.     In about approximately June of 2017, it became so bad that she complained to Metroplex business manager and HR person – Joyce VanStory.  Although HR said they would handle it they apparently never did. Dickson's harassing conduct became worse.  After not being able to tolerate this harassment any longer and receiving no assistance from HR and her superiors, she resigned from the Metroplex.

32.     Another example of Dickson's pattern of behavior occurred in 2017 with another African female named Lolanda Njoku.

33.     Ms. Njoku was hired by Metroplex in and around November -December 2017. Soon after she began working there, administrator David Dickson began making unwanted sexual advances towards her which included sexually explicit text messages and videos.

34.     For example, in and around late December 2017 through January 2018, Dickerson forwarded to Ms. Njoku cell phone a video clip of himself masturbating.  She did not provide him with her telephone number. Because of his position as her boss he was able to access her personnel file and get her number. He also grabbed her vagina and touched her breasts and buttocks without permission several times.

35.     After she indicated to him that these touching's and harassment were unwanted he did not stop.  She reported this conduct to her superiors.  Nothing was done by them to stop the

conduct of Dickerson.  Because of his unwanted advances Ms. Njoku had to resort to filing a

formal sexual harassment complaint to the Equal Employment Opportunity Commission

(hereinafter EEOC) in February of 2018.  That claim was since been resolved through EEOC

mediation.

36.     In or about September of 2017, Metroplex hired Breanna Scott as a nursing assistant

to work in the laundry area.  She also was harassed by Administrator Dickson.

37.     After approximately one month on the job, Dickson began sexually harassing her

also. He repeatedly asked her for sex.  Saying "I will give you a raise if you have sex with me".  He

would go out of his way to catch her alone in her work area and manage to create situations where

he would have to brush up under the ruse of trying to get past her  and try to grab her arm and force

her arm towards his crouch telling her "he wanted her to feel his hard cock" and that he wanted to

"cum all over you" and that "his wife doesn't know how to do anything" and he wanted to "fuck

her in the shower" and how he wanted to "fuck her in his office since no one could get inside his

office"

38.     After asking him as polite as she could to stop he did not stop.  She reported

Dickson's conduct to her superiors.  Nothing was done.  She finally was forced to resign rather than

endure any more of the unwanted and continuous harassment by Dickson.

Plaintiff specific factual allegations

39.     Plaintiff is **Jernesha McGhee**.  She was a licensed nurse at "Metroplex".

40.     She was hired as an LVN by "Metroplex" in October of 2017.

41.     After approximately two months Dickson began his pattern of similar sexual

harassment behavior directed towards plaintiff Jernesha McGhee.

42.     His physical harassment began at the office Christmas party on or about December 22, 2017.

43.     Dickson directed McGhee to retrieve another employee who was working at Metroplex to get her to come over to the Christmas party.  While on her way to retrieve this employee, Dickson cornered her alone in a hallway and tried to kiss her.

44.     While trying to kiss her he also tried to put his hands down her pants.

45.     Shocked, plaintiff pushed Dickson away and walked off in disbelief about what just happened.

46.     Later that same day as she was leaving the facility with a work colleague she received an unsolicited text message from administrator David Dickson. She asked Dickson how he got her number.  He told her "he had everyone's number". He inquired if she told anyone about the incident.  She told him no.  He reminded her that she could lose her job if she told anyone.

47.     McGhee is a single mom who is the sole support for her five children.

48.     McGhee did not report the incident to her supervisors at that time for fear of losing her job.    However, she did mention to her friends the incident involving her boss Dickson.

49.     Several days went by without any further contact from Dickson.

50.     After approximately one week, however, Dickson begins to attempt to corner McGhee alone inside patient rooms in the facility.

51.     Like the other incidents mentioned above, he pretends to reach for items in the room where she is working that require him to reach over or around McGhee.  While pretending to grab those items he intentionally brushes his crouch area against the buttocks of McGhee.  While doing this he attempts to grab her hand and force her hand to grab his crouch. Telling McGhee that "he

wants to cum all over you".  "I wonder how it would feel to be inside of you" along with numerous other lewd comments.

52.     In one instance, Dickson came into a patient's room where McGhee was treating an elderly patient with dementia.  While she was attending to the patient and handling some procedure called "blood sugar", Dickson approached her from behind and began grabbing her breasts, grinding on her buttocks and grabbing her vagina.  She attempted to shake him loose to force him to stop.

53.     During this uncomfortable moment, a friend and colleague of McGhee walked in and Dickson abruptly stopped and walked out ordering the employee who walked in to get back to work.

54.     McGhee asked Dickson to please stop this behavior.  She asked two friends at the facility to escort her whenever Dickson would order her to go to patient's rooms to protect herself.

55.     Sometime thereafter Dickson resorted to sending McGhee lewd text messages.  He sent her a picture of his erect penis in a text message.  He also sent her a video of him masturbating which she deleted from her phone.

56.     After things had escalated to this level McGhee's friends urged her to report his conduct to her superiors.  She did.  She reported the incidents to Joyce VanStory the "HR" person at the facility and to her Assistant Director of Nursing LaRita Goodwin.  Even though this report was made, HR did nothing.  Dickson continued his behavior.

57.     Around the beginning of February of 2018, Dickson, left a sticky note at McGhee's desk telling her he had booked a hotel room at the local Motel 6 and giving her directions how to get there.  He sent her a text saying that she could meet him there or he could come pick her up from work for sex.

58.     After receiving this message and the note left at her work station, McGhee simply had enough.  She began uncontrollably crying.  When her Asst. Director of Nursing LaRita Goodwin (hereinafter ADON) saw her crying, she inquired what was wrong.  McGhee again told her superior what had happened that day and reminded her of her previous oral complaints about Dickson.  Her  "ADON"  told her to bypass the normal procedure of telling HR (i.e. Joyce VanStory) about the incident and to file a formal complaint in writing.  She did.

59.     On February 2, 2018 McGhee filed her formal written email complaint bypassing what she believed was the normal HR complaint procedure.  She sent the email to her "ADON" who forwarded the email to the appropriate corporate personnel at Daybreak.

60.     Later that day, after still being shaken by Dickson's booking of the hotel room for sex request, McGhee confided to her boyfriend Labarros Outley, about what was happening.

61.     Apparently upset, Outley called Dickson that night and told him to stop calling and texting McGhee.  He told Dickson to leave her alone because he was McGhee's boyfriend and there may be consequences if he didn't stop this behavior.

62.     Dickson apologized and said he was sorry for sending the pictures and the video and that he didn't know she had a boyfriend.

63.     On February 5, 2018, Dickson called McGhee at the nurse's station at Metroplex.  To protect herself McGhee placed the call on speaker phone and recorded the conversation.

64.     In that recorded call Dickson admitted that he sent the videos and the pornographic picture text messages.  He says he will delete them.   He asked her to lie for him so "they" wouldn't lose their jobs.  Dickson reveals that he has a meeting with "corporate" later that day and he wanted her to lie for him so he wouldn't lose his job.

65.     After meeting with corporate personnel on February 5, 2018 Dickson was either terminated or allowed to resign that day.

66.     Two days later, on or about February 7th, 2018, a new administrator named Jan Piveral was hired at the facility.

67.     It is believed that Piveral was referred for that position by her friend and colleague Joyce Van Story.

68.     On Piveral's first day, two days after the termination of Dickson and at Piveral's first ever contact with McGhee, McGhee was scolded by Piveral at VanStory's request for speaking to loudly and aggressively and for using her cell phone while at the nursing station.

69.     During the next two weeks numerous people working at Metroplex began having whispered discussions "outing" McGhee as the person who reported Dickson heightening the already hostile environment at that facility.

70.     On March 6, 2018 McGhee was suspended from her LVN position at Metroplex.

71.     On March 12, 2018 McGhee was formally terminated.

72.     On or about May 3, 2018, plaintiff filed a timely Charge of Discrimination against the defendant with the Equal Employment Commission (Equal Employment Opportunity Commission) based on sexual harassment and a second complaint for retaliation.  On August 8th , 2018 the EEOC at plaintiff's request issued a Notice of Right to Sue letter on both her sexual harassment and retaliation claims against the defendant.  Accordingly, all administrative prerequisites have been exhausted prior to filing this petition.

## CAUSES OF ACTION

### COUNT ONE – SEXUAL HARASSMENT

73.     Plaintiff incorporates by reference and re-alleges all the foregoing and further alleges as follows:

74.     At all times herein relevant, Defendant(s) was an "employer" of McGhee, and she was an "employee" of Defendant(s) within the meaning of Title VII. See 42 U.S.C. sec. 2000e(b).

75.     Defendant engaged in practices towards McGhee which intentionally discriminated against her based on sex, including but not limited to, the harassing acts described herein, creating a hostile work environment.  Additionally, Defendants' actions were committed with malice and reckless indifference to McGhee's rights under Title VII of the Civil Rights Act of 1964.

### COUNT TWO: RETALIATION

76.     Plaintiff incorporates by reference and re-alleges all the foregoing and further alleges as follows:

77.     In addition, the actions of the Defendants constitute retaliation in violation of the Title VII of the Civil Rights Act of 1964.  Specifically, Defendant(s) retaliated against McGhee after she opposed the discriminatory practice described herein.

78.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages. Defendants' conduct was willful and justifies an award of punitive damages.

79.     To the extent that the Defendants contend that Plaintiff was fired for a legitimate non-discriminatory reason, said reason is a mere pretext for discrimination.  Alternatively, the reasons(s) given for Plaintiff's termination, even if true are only some of the reasons, and Plaintiff's

complaint for sexual discrimination was a motivating factor in the decision to terminate her

employment.  In other words, the Defendants' had mixed motives for Plaintiff's termination.

## DAMAGES

80.      Plaintiff was discharged from employment by Defendant. Although she has

diligently sought other employment, she has been unable to find a job at comparable pay. In

addition, Plaintiff has incurred expenses in seeking other employment. Plaintiff suffered damage

to her pension or retirement benefits. Plaintiff seeks compensation for all back pay and lost wages

and benefits, including loss of Social Security benefits. Reinstatement to Plaintiff's previous

position is impractical and unworkable. Therefore, Plaintiff seeks an award of front pay and future

lost wages and benefits. Plaintiff suffered mental anguish and emotional distress.

## ATTORNEY'S FEES

81.      Plaintiff was forced to engage counsel to protect her rights. Plaintiff is entitled to

an award of attorney's fees and costs (including, but not limited to, an award of reasonable expert

witness fees), both trial and appellate, under Title VII, 42 U.S.C. §2000e-5(k).

## INTEREST

82.      Plaintiff is entitled to prejudgment and post judgment interest at the highest lawful

rate.

## JURY TRIAL DEMAND

83.      Plaintiff demands a jury trial.

## PRAYER

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for the

following:

a. Compensatory and punitive damages;

b. Back pay and front pay;

c. Attorney's fees and costs;

d. Prejudgment and post-judgment interest;

e. Such other and further relief, at law or in equity, to which Plaintiff may show herself

   justly and lawfully entitled.

Respectfully submitted,

By:  /s/ Douglas C. Greene

Douglas C. Greene
SBN: 49173
**GREENE LAW FIRM, P. C.**
1309b W Abram. St, Suite #200
Arlington, TX.  76013
(817) 622-8806
(817)887-1875 (fax)
dgreene@greenelawfirm.net
**ATTORNEYS FOR PLAINTIFF**
**JERNESHA MCGHEE**

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Jernesha McGhee<br>2143 Oryx Lane<br>Grand Prairie, TX 75052 | From: Dallas District Office<br>207 S. Houston St.<br>3rd Floor<br>Dallas, TX 75202 |

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 450-2018-04285 | Juan F. Munoz,<br>Intake Supervisor | (214) 253-2774 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court** WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☐ More than 180 days have passed since the filing of this charge.

☒ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

for _____  08/08/2018

Belinda F. McCallister,
District Director

*(Date Mailed)*

Enclosures(s)

| | |
|---|---|
| cc: Lori Stephens<br>Director of Human Resources<br>METRO PLEX NURSING & REHAB L.P. BY DAYBREAK<br>VENTURE LLC<br>401 N. Elm<br>Denton, TX 76201 | Greene, Douglas C<br>1309b W. Abrah St. #20076013<br>Arlington, TX 76013 |

EXHIBIT -A